JOHN J. CLARKE, Executor, *vs.* JOSEPH W. HAYES.

Land devised in trust to pay the income, during the life of the testator's sons, to them and the heirs of those who should die first, and, on the survivor's decease, to convey the land to their heirs, may under authority of the legislature be sold, upon giving security to invest the proceeds upon the same trust.

BILL IN EQUITY by the surviving executor of the will of Thomas Cordis for the specific performance of an agreement for the purchase of real estate, which the plaintiff had been authorized by a resolve of the legislature of 1857, *c.* 60, (first giving bond, as he had since done, to the satisfaction of the judge of probate of the county where the will was proved, for the faithful execution of the power so conferred,) to sell and convey in fee simple, " free and discharged from all trusts and claims arising

under or by virtue of the will aforesaid, and from all liability for the application of the purchase money;" " and to invest and hold the net proceeds of such sale or sales during the lives of the four sons of the said testator, in the same manner as is provided for in said will, and for the use and benefit of the same persons as the said property itself, if it had not been sold, would have been holden under the provisions of said will; and to pay over the income received on said proceeds to the persons who would have been entitled to the income and rents and profits of such real estate, had there been no such sale or proceedings as are hereby authorized."

This land was devised by Cordis to his executors in trust to take the rents and profits thereof during the life of the testator's four sons and the longest liver of them, " and therewith make all necessary repairs and improvements, and pay all taxes, insurance and other necessary charges and expenses in and about the same; and, after all payments deducted, then as soon as received, and as often, to pay over the residue of such rents and profits to my said four sons, during their joint and several lives, in equal proportions, to and for their respective, sole and separate use and benefit forever; and after the decease of one or more of my said sons, so long as either of them shall live, then to pay over the proportion that such deceased son or sons would have been entitled to receive of such rents and profits, had he or they been living, to the legal heirs of such deceased son or sons;" and " after the death of all my said four sons, to convey, assign, transfer and set over said real estate to said heirs of my said four sons respectively, in the proportions above named, by right of representation, to have and to hold the same to them respectively, and to their respective heirs, executors, administrators and assigns, to their sole use and behoof forever."

The bill set out the material clauses of the will, and the resolve of the legislature; and alleged that a large portion of the land so devised was unimproved, and did not produce sufficient rent to meet the taxes and other expenses incident thereto, and that the plaintiff was consequently obliged annually to devo' to the payment of such taxes and expenses some portion of th

income derived from other portions of the trust fund in his hands, and which otherwise would be divided among said four sons of the testator.

The defendant demurred to the bill, upon the ground that the legislature had no constitutional power to pass said resolve.

*S. Bartlett,* for the defendant.

*J. J. Clarke & L. Shaw, Jr.* for the plaintiff.

MERRICK, J.    The original object of the defendant in filing a demurrer to the bill is avowed to have been to bring into question the validity of the resolve of 1857, *c.* 60, by which the plaintiff is, in distinct terms, vested with authority to make sale of sundry estates held by him as trustee under the will of Thomas Cordis.    But whatever doubts he may formerly have entertained on the subject, it is now conceded in the written argument of his counsel submitted to our consideration, that, upon the authority of cases heretofore determined in this court, it cannot now be successfully contended that the legislature was incompetent, by reason of any provision in the Constitution, to pass the resolve.

It is certainly well settled that property held in trust, or for life with remainder limited over to persons either known or unknown, is not absolutely uncontrollable, nor necessarily to be preserved unchanged in the same form and condition in which it was when it was first received under the original grant or devise.    By the authority of the legislature, and under suitable restrictions, it may be sold, or otherwise disposed of, if adequate provision is made to secure the rights of all persons and parties who already have or may afterwards become entitled to an interest in it, and in such manner that whatever is received in exchange or compensation for it shall be substituted in its place, and be impressed with the same obligations and devoted to the same ends, purposes and use.    *Rice* v. *Parkman,* 16 Mass. 326 *Davison* v. *Johonnot,* 7 Met. 388.    In the case of *Sohier* v *Massachusetts General Hospital,* 3 Cush. 483, it was held that a legislative resolve authorizing the sale in fee of certain estates held by trustees under devises contained in the last will of Benjamin Joy, so that his daughters should always during their

lives respectively enjoy the income thereof, and that the premises should at their decease go to their issue if any, otherwise to their heirs, was a legal and valid enactment, and in no respect conflicted with any provision in the Constitution. It is impossible to distinguish the present from that carefully considered case, either in reference to the devise, the use and enjoyment or the ultimate destination of the property; and upon its authority the demurrer must be overruled.

It is suggested by the defendant's counsel, as a possible objection to the validity of the resolve, that if the authority it purports to confer should be executed, the intention of the testator, that the real estate upon which it operates, whether productive of income or otherwise, should not be alienated during the lifetime of his sons, may thereby be defeated. This may perhaps be admitted to be a natural, or even a necessary, consequence of a full execution of the power which is conferred. But this can make no difference; since the disposition and control of property by its owner is always subordinate to the dominion of the law and subject to be regulated by its provisions. The testator must be presumed to have understood the limitations as well as the extent of his rights over the estate which was the subject of his devise.

For the same purpose the counsel for the defendant has brought to our notice another but not dissimilar consideration. He puts forward the supposition that the property devised may, after the termination of the intervening life estates, come to be of much greater value than it is at present; and that if it be permitted now to be sold, they who are to take in remainder, since they can have no more than the principal for which it is disposed of, will receive much less than they would have become entitled to if it had been left wholly unmolested. This is a result which is certainly possible; but, on the other hand, their interest may be greatly promoted by the change. It was therefore in this, as it must unavoidably be in all similar cases, a mere question of expediency, to be authoritatively solved and determined by the legislature, acting in its capacity as the common guardian of the whole community. The power to author-

ize the change of an investment, or the sale of property devised to the use of successive donees, necessarily imposes upon it the corresponding duty of deciding definitively at what times, and under what circumstances, their several rights and interests require, or may justify, its exercise. *Demurrer overruled.*