(No. 34441.—

City of Chicago in Trust for the Use of Schools, Appellee, *vs.* William T. Pridmore *et al.*, Appellants.

*Opinion filed Nov. 20, 1957—Rehearing denied Jan. 20, 1958.*

MARION G. McCLELLAND, of Chicago, (WILLIAM T. PRIDMORE, *pro se,* of counsel,) for appellants.

FRANK R. SCHNEBERGER, and FRANK S. RIGHEIMER, both of Chicago, (ROBERT E. WISS, of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from a condemnation judgment of the superior court of Cook County which was entered upon a jury verdict awarding the appellants, as owners and parties interested in the real estate, $25,000 as just compensation for the property in question.

The appellants not only challenged the adequacy of the award, but asked that the judgment be reversed and a new trial ordered for errors committed in the trial of the case.

Appellants contend (1) that they were denied the right to introduce in evidence a contract involving the sale of what they contend to be comparable property; (2) that the petitioner's closing argument was prejudicial error as to the defendants; (3) that the court erred in denying leave to amend defendants' post-trial motion and, by reason thereof, defendants question the constitutionality of section 68.1 of the Civil Practice Act. Ill. Rev. Stat. 1957, chap. 110, par. 68.1.

The property here condemned was for school purposes and consisted of a 5-acre tract located within the city of Chicago. The evidence shows that the tract in question was surrounded by subdivided property, that to the immediate west of the property was Indiana Avenue, that Prairie Ave-

nue would extend through if the property were subdivided, and that Eighty-eighth Street would have to be extended westwardly through said property. The evidence showed that Indiana Avenue was paved and 100 feet wide with curbing, sewer and water, but no sidewalk. The parcel in question was 661.64 feet east and west and 329.22 feet north and south. There are no sewers, water, streets, sidewalks, curbing, or other improvements on this acreage tract except those on Indiana Avenue. The property is zoned for single-family residences and was subject to the municipal code of the city of Chicago relating to zoning and streets.

Both parties agreed that the highest and best use of the property as of the date of the filing of the condemnation petition on July 13, 1956, was for subdivision purposes to be developed for single-family residences. The petitioner called three witnesses on valuation, namely, Harry L. Shlaes, Grover C. Elmore, and Ernest H. Lyons, all of whom testified that the fair cash market value of said property for subdivision purposes was $25,000. There was no question raised as to the competency of these witnesses, nor as to their testimony.

Defendants called two witnesses on valuation, namely, James A. Riggs, who stated in his opinion the tract was worth $56,000, and Bolin V. Bland, who stated in his opinion that the property was worth $60,000.

We consider the appellants' contentions raised in this cause. First, was it error not to admit defendants' exhibits 2 and 3 in evidence?

Defendants' exhibit 2 was a contract for the sale of a tract abutting the northeast corner of the tract in question. Defendants' exhibit 3 was a rider attached to and made a part of the said contract. Defendants contend that the contract and rider were for the sale of a like or similar tract of four acres for a purchase price of $60,000. The court held that the contract was not for the sale of raw land, such as the tract in question, but was for platted land and

contemplated the subdivision of the property and included some of the costs of subdivision. Hence the court held the contract and rider were not for the sale of similarly conditioned property and were not admissible. The contract was for the sale of 28 lots, and provided that before closing a plat of the subdivision would be properly approved and recorded, and a Chicago Title and Trust Company report of title would show the property subdivided into 28 lots available for use as building sites. It is obvious that defendants' exhibits 2 and 3 related to the sale of subdivided lots and the property is not comparable to five raw unsubdivided acres. This court has consistently held that property which has been subdivided into lots is not similar to or similarly conditioned as unsubdivided or acre property. *Forest Preserve District* v. *Wallace*, 299 Ill. 476; *Forest Preserve District* v. *Chilvers*, 344 Ill. 573; *Forest Preserve District* v. *Eckhoff*, 372 Ill. 391.

As to the constitutionality of section 68.1 of the Civil Practice Act the court finds no merit in the contention. The purpose of the act was to consolidate into one motion all requests for post-trial relief, and makes no substantial change in the basic policy of procedure as it existed before. The post-trial motion was in effect a motion for a new trial. The affidavit attached to the motion for new trial did not contain any competent evidence not already produced, or which was not either known to counsel or discoverable upon the exercise of reasonable diligence prior to or during trial. It was therefore properly stricken. (*Forest Preserve District* v. *Folta*, 377 Ill. 158.) The court finds no error in the trial court's ruling in striking the said affidavit and in refusing defendants' motion to strike certain portions of the trial court's order.

Appellants contend that the court erred in giving plaintiff's instruction No. 3 because it does not apply to land situated as is the tract in question. An issue in this case

was the best way the tract could be subdivided. Said instruction No. 3 is in the language of an ordinance specifying the requirements of extension of streets in a subdivision; a matter pertinent to the issue of subdividing. An instruction in the language of an ordinance pertinent to an issue in the cause cannot be error. (*Sweat* v. *Aircraft and Diesel Equipment Corp.* 335 Ill. App. 177.) We can find no error in the giving of this instruction.

Was the argument of petitioner's counsel to the jury prejudicial to the extent that it would constitute reversible error? This requires consideration of certain evidence deemed incompetent. The defendants had called William T. Pridmore, trustee, in whom the title to said property was vested at the time of the filing of the suit. On cross-examination he was asked with reference to some unpaid taxes, both general and special, which had run from 1929 through 1934, and as to whether the property had been foreclosed and a sale had for said taxes. Objections were made to this testimony and originally sustained by the court. Outside of the presence of the jury the matter was gone into and the petitioner offered to show that there was a tax sale of the property for $1,732.64, which settled a total indebtedness of $8,691.59. After the conference, and in the presence of the jury, the petitioner was allowed to ask whether or not the property was sold at a tax foreclosure sale and elicited from the witness that the whole property was sold for $1,100, and later brought out that the sale disposed of some $8,800 worth of taxes. This evidence was highly prejudicial to the defendants for the reason that it had no purpose in the trial of the issues before the jury. The only question before the jury at that time, was, what the fair cash market value of the property was as of the date of the filing of the petition in condemnation. No questions of title or rights to the property could be determined, these all being preliminary matters that the

trial court would have to have determined previous to submitting the issue of the fair cash market value to the jury. (*Department of Public Works and Buildings* v. *Lewis,* 344 Ill. 253 at page 255; *Sanitary District* v. *Johnson,* 343 Ill. 11 (1931) at page 16.) The fact that the property was sold for taxes would be of no aid to the jury in ascertaining the fair cash market value of the property at the time of the filing of the petition which was the sole question it was to determine. This error was later highlighted by the argument of attorneys for the petitioner when it was argued: "Another thing, ladies and gentlemen, now, he refers to this episode here in this case about this tax situation. There was a sale of that property, and they admitted it. Now, everybody has to pay taxes, but there is a device where people will let property lay idle for a long, long time, and don't pay their taxes, and then come in and settle them for ten cents on the dollar, when everybody else pays 100 cents on the dollar."

The argument also contained highly inflammatory remarks to the jury as follows: "Obfuscation—to obfuscate is to bewilder—is to stop having a clear mental conception of what anybody is talking about; to beat around the bush; and you notice time after time I tried to get that man Riggs to please answer a question yes or no, and that word 'yes' or that word 'no' doesn't seem to be in his vocabulary. He kept on talking and rambling all around the bush, and finally he got as far as Washington, D.C., and what he was talking about, only the Lord knows; and the result of it is—I think you have got to conclude that this fellow is a master of obfuscation, and doesn't know anything about real estate, or if he did, he wasn't telling it to you. * * * Well, they might as well have brought a horse doctor in here to testify on values, because all they came in here for was to put up a figure of fifty or sixty thousand dollars, and they might as well have made it $160,000.00 or

$600,000.00 for all the reason there was behind their statements. * * * But the truth finally came out on this whole case, in the final statement of counsel here—the old Army game. We come in here with what we regard as a fair cash market price for this property. They come in and boost it two, three, four times. What's the idea? Not because that's what they honestly believe is the property's value. They think they can fool some of the jurors into thinking, 'Oh, well, somebody testified to this high price. We ought to compromise,' which was suggested here."

Because of the admission of the improper evidence, as stated, and because so much of the argument as narrated was prejudicial and unwarranted, the trial court should have injected itself into the proceedings to see that the litigants received a fair trial. It is always the duty of a trial court to control the proceedings to the extent necessary to insure this result. If prejudicial arguments are made without objection of counsel or interference of the trial court to the extent that the parties litigant cannot receive a fair trial and the judicial process cannot stand without deterioration, then upon review this court may consider such assignments of error, even though no objection was made and ruling made or preserved thereon. *Belfield* v. *Coop,* 8 Ill.2d 293.

This court holds that such argument as outlined by counsel for petitioner constitutes prejudicial error.

For the reasons cited, the judgment of the superior court of Cook County is reversed and the cause remanded for a new trial.

*Reversed and remanded.*